UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LANDMARK CREDIT UNION,

          Plaintiff,

                               Case No. 25-cv-1746-bhl

   v.

TEMENOS USA INC and TEMENOS
CLOUD AMERICAS LLC,

          Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER

---

On November 7, 2025, Plaintiff Landmark Credit Union (Landmark) filed a complaint against Defendants Temenos USA Inc. and Temenos Cloud Americas LLC (collectively, Temenos). (ECF No. 1.) Temenos moved to dismiss on January 16, 2026, and Landmark amended its complaint in response. (ECF Nos. 16 & 21.) The amended complaint alleges that Temenos fraudulently induced Landmark to enter agreements to purchase software and services, violated the Wisconsin Deceptive Trade Practices Act (DTPA), breached its contract with Landmark, and breached the implied covenant of good faith and fair dealing. (ECF No. 21.) Temenos has moved to transfer the case to the forum specified in the parties' forum selection clause, or, in the alternative, dismiss Landmark's claims. (ECF Nos. 27 & 29.) Landmark opposes both motions, arguing the forum selection clause should not be enforced and that it has stated a valid claim. (ECF No. 33-1.) The Court will grant Temenos's motion to transfer the case pursuant to 28 U.S.C. §1404(a). Because the Court is transferring the case, it will not address Temenos's motion to dismiss, leaving those issues for the transferee court's consideration.

Plaintiff Landmark Credit Union is a domestic credit union based in Brookfield, Wisconsin. (ECF No. 21 ¶4.) Defendant Temenos USA is a Delaware corporation based in New York and Pennsylvania. (*Id.* ¶5.) Defendant Temenos Cloud Americas is a limited liability company organized under the laws of Delaware and has no members who are Wisconsin residents. (*Id.* ¶6.)

In 2021, Landmark wanted to modernize its consumer loan origination and management systems (LOS). (*Id.* ¶12.) It issued a request for proposals from vendors on August 9, 2021. (*Id.*) Landmark's request described its expectations, specifying that it needed a customizable, user-friendly system that met Landmark's current needs, and could integrate with third party systems. (*Id.* ¶18.) Landmark also specified the LOS needed strong reporting abilities, to support a wide range of products, and to automatically track regulatory requirements and loan applications. (*Id.*) Vendor proposals were due by August 31, 2021, with remote vendor demonstrations to occur in mid-September 2021. (*Id.* ¶19.)

On August 31, 2021, Temenos proposed its LOS and implementation services to Landmark. (*Id.* ¶21.) Temenos represented that its LOS met Landmark's requirements. (*Id.* ¶¶22–26.) Temenos demonstrated the LOS for Landmark on September 10 and 14, 2021. (*Id.* ¶28.) Temenos's representatives attended these demonstrations. (*Id.* ¶¶31, 42–43.) The representatives described the LOS as a "no code system." (*Id.* ¶¶33–36.) They also stated that Temenos's managed services team would facilitate implementation and work to improve the product with Landmark. (*Id.* ¶38.)

Landmark chose Temenos's proposal in reliance on its assurances about the LOS and managed services team support. (*Id.* ¶48.) From March 2022 to October 2024, Temenos and Landmark entered multiple work agreements about the LOS, all issued under the Master Software and Services Agreement between the parties. (*Id.* ¶49.) Landmark and Temenos also executed a Hosting Agreement to facilitate Temenos's hosting the LOS. (*Id.* ¶50.) The Master Software and Services Agreement and Hosting Agreement both include forum selection clauses that specify

---

[1] This Background is derived from Landmark's amended complaint, (ECF No. 21), the allegations in which are presumed true when considering a motion to dismiss, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007), and documents incorporated by reference, *see Williamson v. Curran*, 714 F.3d 432, 435–36 (7th Cir. 2013); *see also* Fed. R. Civ. P. 10(c).

litigation must be brought in the federal or state courts in or for Philadelphia, Pennsylvania. (ECF No. 21-1 §12.1; ECF No. 21-2 §15(c).)

After reaching those agreements, the parties attempted to implement the LOS. (ECF No. 21 ¶56.) As Landmark discovered problems, it notified Temenos. (*Id.* ¶57.) Temenos assured Landmark the problems could be fixed but the deficiencies persisted. (*Id.* ¶¶57, 59.) By spring 2025, Landmark realized Temenos's representations were inaccurate, and that the LOS did not perform as represented. (*Id.* ¶59.) Temenos also failed to support implementation and manage the LOS. (*Id.* ¶62.) Its subject matter experts failed to fix critical issues, causing Landmark to expend significant time and effort on its loan status automation and audit controls. (*Id.* ¶¶62–68.) Temenos's hosting services were also insufficient. (*Id.* ¶¶75–89.) Between June 2 and June 5, 2025, Temenos's cloud hosting services were largely unavailable due to an external attack. (*Id.*) Landmark has paid over $1,400,000 to Temenos, and over $1,600,000 to third party venders, to try to make the LOS function. (*Id.* ¶¶93–94.) But Landmark's LOS still does not work as described. (*Id.* ¶90.)

## ANALYSIS

Landmark brings five claims: a Fraudulent Inducement Claim (Count I), a claim that Temenos violated the Wisconsin Deceptive Trade Practices Act (Count II), a breach of contract claim alleging Temenos breached the Master Software and Services Agreement (Count III), another breach of contract claim alleging Temenos breached the Hosting Services Agreement (Count IV), and a claim alleging Temenos breached the implied covenant of good faith and fair dealing (Count V). (ECF No. 1 ¶¶97–147.) Temenos seeks to transfer the case to the Eastern District of Pennsylvania pursuant to 28 U.S.C §1404(a), arguing that mandatory forum selection clauses in the parties' Master Software Services Agreement and Hosting Agreement require Landmark to bring its claims in the federal or state court in or for Philadelphia, Pennsylvania. (ECF No. 27; ECF No. 29-1 at 14–15.) In the alternative, Temenos also moves to dismiss Landmark's claims under Rule 12(b)(6). (ECF No. 27.) Landmark opposes both motions. (ECF No. 33.) The Court will transfer the case to the Eastern District of Pennsylvania to enforce the parties' forum selection clauses.

## I. The Forum Selection Clauses Are Valid.

Section 1404(a) provides that "a district court may transfer any civil action to any other district or division where it might have been brought or . . . to which all parties have consented"

in the interest of justice or for the parties' and witnesses' convenience. 28 U.S.C. §1404(a). In the absence of a forum selection clause, "the district court would weigh the relevant factors and decide whether. . . a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atlantic Marine Constr. Co. v. United States Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62–63 (2013) (quoting 28 U.S.C. 1404(a)). But when the parties have agreed to a forum selection clause, the inquiry changes. *Id.* A valid forum selection clause should generally control in all but the most exceptional cases. *Id.* at 63 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).

A valid forum selection clause changes the analysis of whether to grant a motion to transfer in three ways. *Id.* First, "the plaintiff's choice of forum merits no weight." *Id.* As the party defying the forum selection clause, the plaintiff bears the burden of establishing that transfer to the forum selected by the parties is unwarranted. *Id.* Second, a district court "should not consider arguments about the parties' private interests." *Id.* at 64. A district court may therefore only consider arguments about public-interest factors. *Id.* Third, when a party ignores a forum selection clause and files suit in a different forum, a §1404(a) transfer will not carry with it the original venue's choice-of-law rules, which may sometimes affect public-interest considerations. *Id.* at 64–65 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The Supreme Court has further clarified that a forum selection clause "does not render venue in a court 'wrong' or 'improper' within the meaning of §1406 or Rule 12(b)(3)," and when a forum clause authorizes litigation in a specific federal forum, it "may be enforced through a motion to transfer under §1404(a)." *Id.* at 59.

The Court must first determine whether the parties' forum selection clauses are both mandatory and enforceable. A forum selection clause is mandatory when it vests jurisdiction and venue exclusively in the place specified, as indicated by language like "shall be litigated" or "will be litigated." *IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 643 (7th Cir. 2022). The forum selection clause in the Master Software and Services Agreement states "[i]n the event of any litigation arising out of or relating to this Agreement[,] the exclusive venue for such litigation shall be in the federal or state courts in or for Philadelphia, Pennsylvania." (ECF No. 21-1 §12.1.) The analogous provision in the Hosting Services Agreement states "all disputes, claims, or causes of action arising out of or relating to this Agreement shall be brought exclusively in the federal or state courts for Philadelphia, Pennsylvania." (ECF No. 21-2 §15(c).) Both forum selection clauses

use mandatory language, and Landmark does not argue that the clause is merely permissive, or that it is unclear what forums are designated. The forum selection clauses are therefore mandatory.

That leaves the question of whether the forum selection clauses are enforceable. Courts apply federal law in determining whether a forum selection clause is enforceable. *IFC Credit Corp. v. Alliano Bros. Gen. Contractors*, 437 F.3d 606, 608 (7th Cir. 2006). A forum selection clause will be enforced unless "it can be clearly shown 'that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Muzumdar v. Wellness Intern. Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Importantly, the district court must focus on the forum selection clause itself, not the agreement as a whole. *Id.* In other words, the party trying to void the forum selection clause must argue or show that the forum selection clause *itself* was procured through fraud. *Id.*

Landmark makes several arguments against transferring the case, but none are persuasive. It first asserts that *venue* is proper in the Eastern District of Wisconsin, and that Landmark has conceded this by not filing a motion to dismiss relying on Rule 12(b)(3) and 28 U.S.C. §1406(a). (ECF No. 33-1 at 13.) But venue is not the issue. Temenos is not trying to dismiss for improper venue; it is trying to transfer the case to enforce the parties' forum selection clauses. *See Atl. Marine Constr. Co., Inc.,* 571 U.S. at 59 (explaining that a forum selection clause should be enforced through §1404(a) because it does not render venue in a court "wrong" or "improper); (ECF No. 29-1 at 14–15.)

Landmark next admits that the forum selection clauses are valid, while still "maintaining that the LOS Agreements were entered into only because of Temenos' pre-contractual fraudulent misrepresentations, rendering such agreements contractually invalid and voidable." (ECF No. 33-1 at 14–15.) But Landmark does not offer any argument that the forum selection clauses were themselves procured through fraud and, absent such proof, the forum selection clauses are valid and enforceable even if there are claims of fraud related to the agreements as a whole. *See Muzumdar*, 438 F.3d at 762.

Landmark next argues that "Temenos'[s] failure to support its motion with Pennsylvania law, given its assertion that Section [12.1] is valid, enforceable, and unambiguous, is fatal to its Motion." (ECF No. 33-1 at 15.) In support, Landmark cites *Texas Hill County Landscaping, Inc v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 413 (N.D. Ill. 2021), for the proposition that when a

defendant "fail[s] to cite or analyze the governing law in support of its Rule 12(b)(6)" its arguments to dismiss should be waived. (*Id.*) But the case is irrelevant, and the proposition that Landmark cites it for does not apply here. In *Texas Hill Country*, a defendant moved to dismiss under Rule 12(b)(6), arguing that the plaintiff had failed to adequately plead essential elements of its claims. 522 F. Supp. 3d at 412. That district court held that the parties had not developed the legal and factual record necessary to resolve choice of law questions raised, and that the defendant's brief, which cited law from another state without establishing *why* that law should govern, had waived arguments on that issue. *Id.* at 413. That holding has no application here. The Court's ruling concerns Temenos's motion to transfer, which is based on the parties' forum selection clauses and relevant federal law. *See IFC Credit Corp.,* 437 F.3d at 608. The substantive Wisconsin law Temenos cited, while potentially relevant for the Court that will ultimately assess its motion to dismiss, is not relevant to this first question.

Landmark next argues that its "non-breach-of-contract claims" do not arise out of the parties' agreements, and that its "fraudulent inducement and [Wisconsin Deceptive Trade Practices Act] claims are distinct from the contracts" and should be analyzed under Wisconsin Law. (ECF No. 33-1 at 16.) Based on context, it appears Landmark is arguing these individual claims should not be transferred, because they do not fall within the claims referenced in the forum selection clauses—but Landmark does not do the Court, or Temenos, the favor of supporting its argument with caselaw, or even a clear explanation of what it means. Landmark has not offered any reason why it would be proper to split up the case during the transfer. The Court therefore will not hold back some of its claims here.

## II.   There are no Extraordinary Circumstances That Make Transfer Inappropriate.

The next question is whether there are any extraordinary public interest factors that warrant ignoring the forum selection clause and denying the motion to transfer. *See Atlantic Marine Constr. Co.,* 571 U.S. at 64. The Court may consider public interest factors like "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id*. at 63 n.6.

Landmark argues that the events occurred in Wisconsin, and Wisconsin has an interest in protecting its citizens from fraudulent practices targeting Wisconsin businesses. (ECF No. 33-1 at 14.) It provides no analogous case in which this interest carried the day to negate a forum

selection clause agreed to by sophisticated parties.  The Court agrees with Temenos's point that this is inadequate and does not qualify as the extraordinary circumstances contemplated in *Atlantic Marine*.  (ECF No. 36-1 at 8–9 (citing *ACD Distrib., LLC v. Wizards of the Coast, LLC*, No. 18-cv-658-jdp, 2018 WL 4941787, at *1 (W.D. Wis. Oct. 12, 2018)).  If Wisconsin's interest in protecting its businesses from allegedly fraudulent practices were enough, any business alleging fraud could thwart a forum selection clause.  The Court will grant Temenos's motion to transfer.

## CONCLUSION

The Court will grant Temenos's motion to transfer this case to the Eastern District of Pennsylvania, pursuant to 28 U.S.C. §1404(a).  As the Court is transferring the case, it will not address Temenos's motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Transfer, ECF No. 27, is **GRANTED**.  The Clerk of Court is directed to **TRANSFER** this action to the Eastern District of Pennsylvania, pursuant to 28 U.S.C. §1404(a).

Dated at Milwaukee, Wisconsin, on July 28, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge